UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY COLE,

                Plaintiff,        Civil Action No. 13-13422
                                     Honorable David M. Lawson
                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [16, 20]

Plaintiff Jeffrey Cole ("Cole") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [16, 20], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Cole is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Cole's Motion for Summary Judgment [16] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.     REPORT**

    **A.     Procedural History**

On April 1, 2010, Cole filed applications for DIB and SSI, alleging a disability onset date of August 21, 2009.[1] (Tr. 20, 86-87).[2] These applications were denied initially on January 3, 2011. (Tr. 84-85). Cole filed a timely request for an administrative hearing, which was held on September 15, 2011, before ALJ David A. Mason, Jr. (Tr. 264-98). On October 4, 2011, ALJ Mason issued a written decision finding that Cole was not disabled. (Tr. 52-61). The Appeals Council subsequently granted Cole's request for review and remanded the matter for further administrative proceedings. (Tr. 42-44).

Following remand, another hearing was held on January 3, 2013, before ALJ Jerome B. Blum (hereinafter the "ALJ"). (Tr. 299-309). Cole, who was represented by counsel, appeared in person and testified at the hearing, and the ALJ also heard testimony from vocational expert Michael Rosko. (*Id.*). On February 21, 2013, ALJ Blum issued a written decision finding that Cole is not disabled. (Tr. 20-33). On September 18, 2013, the Appeals Council denied review. (Tr. 4-7). Cole then filed for judicial review of the final decision on August 9, 2013. (Doc. #1).

    **B.     Background**

        *1.     Cole's Reports and Testimony[3]*

At the time of the January 2013 administrative hearing, Cole was 43 years old. (Tr. 301-

---

[1] Previously, Cole had filed applications for DIB and SSI in August 2006. These claims were denied initially in December 2006. At Cole's request, an administrative hearing was held on May 14, 2009, after which ALJ Robert C. Asbille issued a written decision finding that Cole was not disabled. Cole did not appeal that decision. (Tr. 20).

[2] The transcript referenced in this Report and Recommendation is the un-indexed transcript filed with the Court on February 27, 2014. (Doc. #15).

[3] Because Cole challenges only the ALJ's assessment of his mental limitations – and, specifically, his limitations with respect to maintaining concentration, persistence, or pace – the Court will focus its discussion primarily on evidence relating to Cole's mental condition.

2

02). He completed the tenth grade but had no further education. (Tr. 90). From 1993 to 2005, Cole worked as a machine builder in the automotive industry. (*Id.*). He indicated that he stopped working in June 2005 because of his medical conditions. (*Id.*).

Cole testified that he suffered from both physical and mental impairments during the relevant time period.[4] (Tr. 302). From a mental perspective, Cole indicated that he suffers from emotional problems and is "depressed all the time." (Tr. 108, 305). Cole indicated that these problems stem in part from the fact that his daughter was in and out of the hospital for five years with an eating disorder, and his son was severely injured in a car accident. (*Id.*). Cole indicated that his primary care physician prescribed Lexapro for depression. (Tr. 92). He is able to pay bills, count change, and handle a checking and savings account. (Tr. 110). However, he has trouble finishing what he starts and indicated that he is "under a lot of stress." (Tr. 112-13).

    2.    *Medical Evidence*

Medical records from Cole's treating physicians say very little with respect to any mental impairments or limitations. (Tr. 168-249). On October 9, 2008, Cole's gastroenterologist reported that Cole was "under 'unbearable stress,'" apparently as a result of the chronic diarrhea he had been experiencing for approximately one year. (Tr. 186). Cole indicated that his family doctor had prescribed Lexapro, but he had not taken it because it was "very expensive." (*Id.*).

---

[4] From a physical perspective, Cole indicated that he is blind in his right eye and that, approximately twice a year, he gets a "flare-up" of sharp eye pain and bleeding. (Tr. 302). Although the vision in his left eye has worsened slowly over time, he is still able to read handwriting and newspapers and make out pictures on the television. (Tr. 306). In addition, he has tendonitis in his elbow and has difficulty gripping and grasping objects. (Tr. 302). Cole also has gout and testified that he experiences flare-ups at least once a month, which last anywhere from one to two weeks. (Tr. 304). He also experiences frequent diarrhea as a result of chronic pancreatitis and gastroduodenitis. (*Id.*). Cole further testified that his "hip is dead" because it has not been "getting blood" for some period of time and, as a result, he cannot walk or stand and must use crutches. (Tr. 303). Although many of Cole's alleged physical conditions are not specifically borne out by the medical evidence, the Court need not resolve these discrepancies, as Cole challenges only the ALJ's assessment of his *mental* conditions.

Cole's gastroenterologist did not note any psychiatric symptoms at this visit, however. (Tr. 186-90). Twice subsequently – in December 2008 and February 2010 – Dr. Wayne Gunckle, who treated Cole's elbow pain, noted that Cole said he felt severely depressed and had considered suicide. (Tr. 210, 220). Records also indicate that Cole's primary care physician prescribed Elavil in March 2009 (but Cole did not take it) and again in June 2009. (Tr. 182-83).

In May 2012, a specialist who evaluated Cole for elevated blood counts noted that he was "severely depressed" (but was not having suicidal thoughts), and recommended that he follow up with his primary care physician for further treatment. (Tr. 249). Even after Cole returned to his family doctor, however, he failed to report – and his doctor failed to note – any depression-related symptoms. (Tr. 239). In all other respects, progress notes from Cole's treating physicians were completely normal with respect to Cole's mental status, and no treating physician diagnosed any mental impairment or referred him for mental health treatment. (Tr. 168-249).

On December 21, 2010, Cole underwent a consultative psychological examination with Shelley Galasso Bonanno, a limited licensed psychologist, and Lisa Silver, Ph.D. (Tr. 226-32). At that time, Cole reported symptoms of depression stemming from a fear of losing his house and difficulties with his wife and children. (Tr. 227). He also reported sleep and appetite disturbances, a loss of interest in pleasurable activities, fatigue, and feelings of hopelessness. (*Id.*). Cole denied a history of outpatient mental health services. (*Id.*). He indicated that he had been arrested for drunk driving on two occasions and said that, up until April 2009, he "drank a 12 pack of beer a day since [he] was 18." (*Id.*). Cole also indicated that he had been arrested at various times for leaving the state while on probation, unpaid child support, and attempted murder. (*Id.*). When asked about daily activities, Cole indicated that he tries his best with

4

respect to interpersonal relationships and enjoys fishing and going to the gym. (Tr. 228). He also stated that he tries to perform household chores, but how much he can do depends on his physical pain. (*Id.*). During the examination, it was noted that Cole was cooperative and appeared motivated, but he had low self-esteem, limited insight, a blunted affect, and could not perform serial 7's. (Tr. 228-30). Ms. Bonanno diagnosed alcohol abuse, depressive disorder NOS, and cognitive disorder NOS; assigned a Global Assessment of Functioning ("GAF")[5] score of 48; and characterized Cole's prognosis as "guarded." (Tr. 231).

Edward Halperin, M.D., a psychiatrist, also provided a report dated December 15, 2012. (Tr. 263). Dr. Halperin stated that he had reviewed Cole's file, including Ms. Bonanno's consultative examination. (*Id.*). He opined that Cole's activities of daily living were limited as a result of his physical problems, and stated that any deficits with concentration, persistence, or pace would "not interfere with his capability to do simple work." (*Id.*). In conclusion, Dr. Halperin indicated that he agreed with the diagnoses assessed by Ms. Bonanno and Dr. Silver and further opined that Cole's "primary problems are physical rather than psychological." (*Id.*).

On December 30, 2010, Rom Kriauciunas, Ph.D., a state agency medical consultant, reviewed Cole's records and completed a Mental Residual Functional Capacity ("RFC") Assessment and a Psychiatric Review Technique ("PRT"). (Tr. 142-59). He noted that Cole suffers from an affective disorder (as defined in Listing 12.04). (Tr. 142, 145). On the PRT form, Dr. Kriauciunas rated the "paragraph B" criteria of the mental impairment listings as follows: mild restriction in activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no

---

[5] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

episodes of decompensation.[6] (Tr. 152). In Section III of the Mental RFC Assessment form, Dr. Kriauciunas opined that Cole was able to do "simple, low-stress, unskilled work" and perform "simple tasks on a sustained basis." (Tr. 158).

### 3. Vocational Expert's Testimony

Michael Rosko testified as an independent vocational expert ("VE") at the January 2013 administrative hearing. (Tr. 306-09). The VE characterized Cole's past relevant work as a machine builder as skilled in nature and performed at the heavy exertional level. (Tr. 307). Then, the ALJ asked the VE to imagine a claimant of Cole's age, education, and work experience, who could perform unskilled sedentary work, but could lift up to ten pounds and must have the option to sit or stand at will. (*Id.*). The VE testified that the hypothetical individual would not be capable of performing Cole's past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in various bench jobs (4,000 jobs in the state of Michigan). (*Id.*).

### C. **Framework for Disability Determinations**

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

---

[6] Specifically, in Section I of his RFC Assessment, Dr. Kriauciunas opined that Cole is not significantly limited in the ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and work week without interruptions from psychological symptoms; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers without distracting them; maintain socially appropriate behavior; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals and make plans independently of others. (Tr. 156-57). Dr. Kriauciunas further opined that Cole is moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (*Id.*).

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Cole is not disabled under

7

the Act. At Step One, the ALJ found that Cole has not engaged in substantial gainful activity since August 21, 2009, the alleged onset date. (Tr. 24). At Step Two, the ALJ found that Cole has the severe impairments of blindness and keratitis in the right eye, right elbow epicondylitis, pancreatitis, gout, depression, and history of alcohol abuse now in remission. (*Id.*). At Step Three, the ALJ found that Cole's impairments do not meet or medically equal a listed impairment. (Tr. 24-26).

The ALJ then assessed Cole's residual functional capacity ("RFC"), concluding that he is capable of performing unskilled sedentary work, but can lift up to ten pounds and needs to alternate between sitting and standing as he deems necessary throughout the day. (Tr. 26-31).

At Step Four, the ALJ determined that Cole is unable to perform his past relevant work as a machine builder. (Tr. 31). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Cole is capable of performing a significant number of jobs that exist in the national economy. (Tr. 32-33). As a result, the ALJ concluded that Cole is not disabled under the Act. (Tr. 33).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In his written decision, the ALJ found that Cole has the severe mental impairments of

depression and a history of alcohol abuse (now in remission), which impose limitations on his ability to work.[7] (Tr. 24). The ALJ then concluded that Cole has the mental RFC to perform unskilled work. (Tr. 26-31). In his motion, Cole argues that the ALJ's mental RFC finding (and the hypothetical questions subsequently posed to the VE) failed to properly take into account his moderate limitations with respect to concentration, persistence, or pace. (Doc. #16 at 20-24).

As an initial matter, substantial evidence supports the ALJ's finding that Cole retains the mental RFC to perform unskilled work. In reaching this conclusion, the ALJ found it "imperative" that Cole had never sought or received formal mental health treatment. (Tr. 27). The ALJ referenced a May 2012 observation made by one of Cole's treating physicians that he appeared "severely depressed" and recommended that Cole follow up with his family doctor. (Tr. 27, 249). However, the ALJ also noted that Cole's family doctor never diagnosed depression or any related symptoms. (Tr. 27). Nor did the doctor refer Cole for mental health treatment. (*Id.*). Moreover, the ALJ's limitation to unskilled work is entirely consistent with Dr. Halperin's December 2012 observation that Cole mentioned no problems with concentration or pace to the consultative psychologists and his observation that Cole had primarily physical – rather than psychological – problems. (Tr. 28, 263). This limitation is also consistent with the opinion of the state agency reviewing psychologist, Dr. Kriauciunas, that Cole retains the RFC to perform "simple, low-stress, unskilled work" on a sustained basis.[8] (Tr. 158).

---

[7] Additionally, as set forth above, the ALJ found that Cole has the severe physical impairments of blindness and keratitis in the right eye, right elbow epicondylitis, pancreatitis, and gout. (Tr. 24). As a result, the ALJ found that Cole is physically limited to a reduced range of sedentary work. (Tr. 26-31). Cole does not challenge the ALJ's physical RFC finding, and the Court finds that it is supported by substantial evidence.

[8] Much of Cole's brief is dedicated to an argument that the ALJ's mental RFC finding should have included limitations that correspond specifically with Dr. Kriauciunas' check-box findings – contained in Section I of the Mental RFC Assessment form – that Cole is moderately limited in his ability to understand, remember, and carry out detailed instructions, and maintain attention

Citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920 (E.D. Mich. 2005), and other cases, Cole argues that the ALJ's limitation to unskilled work does not adequately address his moderate CPP limitations. (Doc. #16 at 21-24). This is a frequently litigated issue in the Eastern District of Michigan. It is true that, in certain situations, courts have held that limiting a claimant to merely "simple," "unskilled," or "routine" work is insufficient to address moderate CPP deficiencies.[9] It is equally true, however, that courts have held that, under some circumstances, limitations like those imposed by the ALJ in the instant case adequately account for such deficiencies. *See, e.g., Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) ( "unskilled" work limitation in RFC was sufficient to account for ALJ's finding that claimant "often" experiences issues with CPP); *Edmunds v. Comm'r of Soc. Sec.*, 2010 WL 3633768, at *8 (E.D. Mich. Aug. 17, 2010) (substantial evidence supported ALJ's finding that claimant with moderate CPP deficiencies could perform "simple, routine, repetitive" work).

There is no bright-line rule requiring remand whenever an ALJ's RFC finding (and

---

and concentration for extended periods of time. (Doc. #16 at 21-24 (citing Tr. 156-58)). This argument, however, misapprehends the purpose and function of the different sections of the Mental RFC Assessment form. Section I of the form is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." Program Operation Manual System ("POMS") DI 24510.060(B)(2)(a) (emphasis in original). Section III, entitled "Functional Capacity Assessment," contains the mental RFC assessment of the state agency psychiatrist. *See* POMS DI 24510.060(B)(4)(a). POMS is viewed as persuasive authority in this circuit, and other courts have rejected arguments similar to Cole's – that the ALJ should have incorporated Section I findings into the RFC analysis. *See Joiakim v. Comm'r of Soc. Sec.*, 2011 WL 1120043, at *6 (E.D. Mich. Mar. 8, 2011) ("Section I of the mental assessment is merely a worksheet and does not constitute the RFC assessment.") (citing cases). In this case, Dr. Kriauciunas apparently summarized his Section I findings (namely, that Cole was moderately limited in only five of the twenty areas evaluated) in Section III. Regardless, however, the fact that these check-box findings from Section I were repeated in Section III does not detract from Dr. Kriauciunas' ultimate opinion, which is that Cole retains the ability to perform simple, low-stress, unskilled work on a sustained basis. The ALJ's mental RFC finding is consistent with this conclusion.

[9] *See, e.g., Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007); *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009).

subsequent hypothetical) includes a limitation to "unskilled work" but does not contain a more specific concentration-related limitation. *See Jones v. Comm'r of Soc. Sec.*, 2012 WL 4355532, at *9 (E.D. Mich. Sept. 24, 2012); *Caradine v. Comm'r of Soc. Sec.*, 2013 WL 388729, at *7 (E.D. Mich. Jan 11, 2013). Rather, the court must look at the record as a whole and determine whether substantial evidence supports the RFC. *See Jones*, *supra* at *9; *Caradine, supra* at *7; *Lewicki v. Comm'r of Soc. Sec.,* 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

In *Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008), the court considered the adequacy of the ALJ's conclusion that the claimant retained the RFC to perform "simple routine tasks in a low stress environment." In that case, as here, the state agency doctor completed both a PRT, finding that the plaintiff had a moderate CPP limitation, and a Mental RFC Assessment Form, finding that the plaintiff had moderate limitations in several concentration-related categories. *Id.* at *7. However, as is also the case here, the doctor ultimately concluded that the plaintiff retained the ability to perform unskilled tasks on a sustained basis. *Id.* at *4. The *Hess* court concluded that because the ALJ relied on the state doctor's finding of a moderate impairment with respect to CPP, it was reasonable for the ALJ to rely on that doctor's ultimate conclusion that the plaintiff could perform unskilled work on a sustained basis and, accordingly, to omit a more specific, concentration-based limitation from the hypothetical. *Id.* at *8. Many recent Eastern District of Michigan cases have been similarly decided. *See, e.g., Young v. Comm'r of Soc. Sec.*, 2011 WL 2601014, at *10 (E.D. Mich. May

12

23, 2011) ("Although Plaintiff correctly cites the moderate limitations noted in the assessment, Plaintiff fails to mention that the same assessment also concluded that Plaintiff is 'capable of unskilled work.'"); *Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682, at *8 (E.D. Mich. May 17, 2011) ("[T]his Court finds that Dr. Marshall's findings that Plaintiff has moderate limitations in concentration, persistence, and pace have to be considered in conjunction with his ultimate conclusion (twice reached) that, despite the concentrational limitations, Plaintiff could perform unskilled work on a 'sustain[ed] basis.'"); *Seach v. Comm'r of Soc. Sec.*, 2011 WL 1792666, at *8 (E.D. Mich. Apr. 6, 2011) ("The undersigned concludes that the ALJ's determinations regarding Plaintiff's mental impairments are fully supported by the substantial evidence in the administrative record. In this matter, the State Agency examiner specifically stated that Plaintiff's 'psychological limitations do not appear to interfere with potential for work activities that are simple in nature. [Plaintiff] retains the capacity for simple tasks on a sustained basis.'"); *Lewicki*, 2010 WL 3905375, at *3 ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place. The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work.").

As in *Hess* and *Lewicki*, the ALJ's finding of a moderate CPP limitation should be considered in conjunction with Dr. Kriauciunas' broader conclusion, that Cole can successfully perform unskilled work. (Tr. 158) (finding that he could perform "simple, low-stress, unskilled work" and perform "simple tasks on a sustained basis."). *See also De-Giber v. Comm'r of Soc. Sec.*, 2012 WL 6966653, at *9 (E.D. Mich. Oct. 24, 2012); *Carlin v. Comm'r of Soc. Sec.*, 2013 WL 639338, at *7 (E.D. Mich. Jan 11, 2013) (the ALJ's RFC limitation of plaintiff to simple,

13

routine work was sufficient where state psychologist concluded that plaintiff was moderately limited with respect to CPP but retained the capacity to "perform simple, routine tasks on a sustained basis"). Thus, under the facts of this case, by expressly limiting Cole to "unskilled work," the ALJ adequately accounted for Cole's moderate CPP limitations.

Cole also argues that the ALJ's hypothetical questions were insufficient because they failed to account for all of his credible limitations. (Doc. #16 at 17-24). An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In this case, to the extent Cole argues that his functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. The ALJ posed a complete hypothetical question to the VE – asking him to consider an individual with Cole's age, education, work experience, and RFC – and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Cole is not disabled. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (where hypothetical accurately described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence).

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion

for Summary Judgment [20] be GRANTED, Cole's Motion for Summary Judgment [16] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: July 31, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager